UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUTAL INSURANCE COMPANY,<br>Plaintiff, | )<br>)<br>)<br>) | |
| vs. | ) | 1:07-cv-0327- SEB-JMS |
| | ) | |
| ESTATE OF ASHLEY SLOAN, DOUG HENDRICK, Z.H. by his Next Friend, Doug Hedrick and JEREMY PRATER,<br>Defendants. | )<br>)<br>)<br>) | |

**<u>ENTRY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

On December 19, 2006, Ashley Sloan was a passenger in a 1995 Buick Park Avenue (the "Buick") being driven by Defendant Jeremy Prater, her "on again -off again" boyfriend. Defendant Prater ran a stop sign and struck a vehicle being driven by Defendant Doug Hedrick, who was accompanied by Z.H., a minor. Sloan died from the injuries she received in the accident; her estate is also a Defendant in this litigation. What we know about the ownership of the Buick is based almost entirely upon the testimony of Jeffrey Robey. Robey was originally named as a Defendant in this action, but has since been dismissed.

Robey purchased the Buick on or about August 20, 2006, with the intent that it be used by his daughters. He bought the car for $1,000 from a private owner, had it licensed and insured and had the brakes fixed. However, his daughters did not like the Buick and

indicated almost immediately that they would not drive it. Robey owned several other vehicles which he and his daughters drove, but after his daughters rejected the Buick, he retained it with no immediate plans for its future use.

At approximately this same time, Ashley Sloan began staying at Robey's residence. According to Robey, Sloan had had a falling out with her roommate, Christine Juday, who was Robey's "on-again-off again" girlfriend. Robey claims that he and Sloan had dated a couple times, but they were essentially just friends and he was trying to help her out during a tough time in her life by allowing her to stay at his house for awhile. Indeed, we know from the deposition testimony of various witnesses who knew her that Ashley Sloan had been experiencing financial difficulties after quitting high school several years prior. She moved out of her mother's home to live in an apartment for awhile, after which she moved in with her grandmother and thereafter with various others who took her in. She had owned her own car at one point, but apparently lost it because of financial reasons and thus depended on others, including Christine Juday, to take her places, including to her the various places of employment.

While residing at Robey's house, Sloan expressed interest in purchasing the Buick from Robey. Robey agreed to allow her to purchase the vehicle for $1800 through installment payments over time in amounts she was able to manage. Robey testified that they wrote up a simple agreement of sorts, but he has no idea what came of that document. Sloan took possession of the car from Robey and paid him her first payment

of two hundred dollars sometime in late August or early September.  Shortly after taking possession of the Buick, she had a stereo system installed and the car's windows tinted.  Ashley Sloan eventually moved out of Robey's home, but continued to make installment payments in cash to Robey in the amounts of $100 or $200 dollars every few weeks.  By the time of the accident, Sloan had paid a total of $1200 to Robey for the car.

Robey knows of no one other than Sloan and Juday who had knowledge that Sloan was purchasing the Buick from him.  He retained the title to the vehicle as security, intending to transfer title to Ashely when she finished paying for it.  Sloan had indicated that she intended to obtain insurance for the vehicle, but Robey continued to carry the vehicle on his policy - the policy issued to him by Plaintiff, American Family Mutual Insurance Company (American Family").  After the accident, Defendants Doug Hedrick, Z. H., Jeremy Prater and the Estate of Ashley Sloan have each asserted claims against this policy.

On March 9, 2007, American Family filed this declaratory judgment action seeking a declaration that it owes no coverage or defense to Sloan's estate or to Jeremy Prater because any coverage for the Buick under the policy it issued to Robey terminated upon Robey's sale of the vehicle to Sloan and, further, even if the policy remained in effect,  Prather was not a permissive user of the vehicle. American Family originally named Jeffrey Robey as a Defendant in this action as well, but stipulated to his dismissal

in March of 2008.[1]  Claiming that there is no issue of material fact, American Family has moved for summary judgment in its favor.  Defendants Doug Hedrick , Z. H. and the Estate of Ashley Sloan all seek a counter-determination that American Family owes coverage and a defense to Prater against the claims of Hedrick, Z. H. and the estate.  They contend as well that there remain questions of fact with respect to whether Robey had sold the vehicle to Ashley Sloan and that, regardless, Prater was clearly a permissive user under the terms of the American Family policy.

### *Summary Judgment Standard*

Summary judgment is available where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  We draw all reasonable inferences from undisputed facts in favor of the non-moving party and view the disputed evidence in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, the non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements; rather, he must go beyond the pleadings to support his contentions with properly admissible evidence.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

---

[1] Robey filed cross-claims for indemnity against Prater and the Sloan Estate at the time he filed his answer.  When American Family's motion to dismiss him from the lawsuit was granted in March of 2008, Robey immediately filed a motion to dismiss his cross-claims.  We granted that motion during the course of the briefing on the instant motion.

*Analysis*

The key issue in resolving the dispute before us is whether Robey had transferred ownership of the Buick to Sloan prior to the accident, as opposed to her having been merely a permissive user.[2] The statutes governing financial responsibility for vehicles in Indiana are set out in Article 25 of Title 9 of the Indiana Code. However, the definition of the term "owner," as referenced in those statutes, is set forth in Article 13, providing that:

> **Sec. 121.**
> \*\*\*
> (b) "Owner" for purposes of IC 9-21 and IC 9-25, means, when used in reference to a motor vehicle, a person who holds the legal title of a motor vehicle, or if a:
>
> > (1) Motor vehicle is the subject of an agreement for the conditional sale or lease of the motor vehicle with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee; or
> >
> > (2) Mortgagor of a motor vehicle is entitled to possession;

---

[2] American Family argues that, even if we were to decide that Sloan was simply using the Buick with Robey's permission, Prater did not have Robey's permission to drive the vehicle and therefore would not be entitled to coverage under the policy. We disagree with that assertion, because there is no evidence that Sloan, who undeniably had lawful possession and unlimited permission to use the Buick, did not give Prater permission to use the Buick on the night of the accident. The policy excepts from its broad coverage of anyone using an insured vehicle, those persons "using a vehicle without the permission of the person having lawful possession." By implication, those persons who have the permission of the person in lawful possession would also be a permissive user and be covered under the policy. *See Learman v. Auto Owners Ins. Co.,* 769 N.E.2d 1171, 1176-78 (Ind. App. 2002). Consequently, if the policy was in effect at the time of the accident, Prater was a permissive user.

>       the conditional vendee or lessee or mortgagor is considered to be the owner
>       for the purpose of IC 21 and IC 25.

Ind. Code § 9-13-2-121(b).

Once the "ownership" of a vehicle is transferred, the person who transferred that interest no longer has the ability to give "permission" to someone to use the vehicle, as it is no longer his vehicle. *Great West Cas. Co. v. National Cas. Co.,* 385 F.3d 1094, 1098 (7th Cir. 2004). Transfer of a vehicle's title is not a prerequisite to ownership of that vehicle under Indiana financial responsibility statutes. *O'Donnell v. American Employers Ins. Co.,* 622 N.E.2d 570 (Ind. App. 1993); *see also*, Ind. Code § 9-13-2-121(b) .

In order to determine whether a party in possession of a vehicle is an owner or a permissive user under an insurance omnibus clause, Indiana courts look to the state's financial responsibility statutes relating to the operation of motor vehicles. *Great West,* 385 F.3d at 1095-96; *O'Donnell,* 622 N.E. 2d at 574. If a motor vehicle is the subject of an agreement for a conditional sale or lease with the right of purchase upon the performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, the conditional vendee or lessee is considered the owner. Ind. Code § 9-13-2-121(b). As the Indiana Court of Appeals explains:

>       As a rule, to establish an insurable interest for liability coverage, only
>       the insured's legal accountability for accident or loss must be shown.
>       Therefore, liability insurance must only be issued in instances where the
>       insured could be held liable. Accordingly, when an insured loses ownership

>and possession of the vehicle, his insurable interest in it ceases with respect to liability to third persons.

*Progressive Northern Ins. v. Consolidated Ins. Co,* 673 N.E.2d 522, 525 (Ind. App. 1996)(citations omitted).

The circumstances in the *Progressive Northern* case are markedly similar to the case before us. There, Consolidated Insurance Company provided automobile liability coverage to the Collett family. One Simpson had agreed to repair the Collett's roof in exchange for $300 and a Dodge automobile that the Colletts owned. *Id.* at 523. Part way through completion of the repair job, Simpson's own vehicle broke down, prompting the Colletts to agree to turn over possession of the Dodge vehicle that was part of their agreed compensation to him, but the Colletts refused to sign over the title until the roofing repairs were finished. *Id.* The parties in *Progressive Northern* agreed that, though conditional, a sale of the vehicle had occurred. *Id.* at 524. Thereafter, Simpson was in an accident causing injuries to a third party who filed suit thereby generating a coverage dispute between two insurers, Consolidated Insurance and Progressive Northern Insurance. Progressive Northern insured the injured party, but argued that the Consolidated policy should apply, not the uninsured motorists coverage in its policy. *Id.* at 523. Noting that Indiana's financial responsibility laws are unique as compared to certain other states and after declining to apply Michigan law, the Indiana appellate court ruled that ownership had passed from the Colletts to Simpson at the point when the Colletts agreed to make the Dodge a part of Simpson's compensation and turned over

possession to Simpson. *Id.* at 525. Once ownership of the vehicle passed, the Court ruled, the liability provisions of the Consolidated policy covering the Colletts no longer applied. *Id*. at 525-26.

In an effort to distinguish the holding in *Progressive Northern*, Defendants here challenge whether Robey had actually completed the sale of the Buick to Ashley Sloan, an issue which we agree is dispositive of the coverage issue. Defendants contend that, under Indiana law, Robey retained an insurable interest in the Buick, regardless of any conditional sale, citing the Seventh Circuit opinion in *Ohio Farmers Ins. Co. v. Lanta*, 246 F.2d 182 (7th Cir. 1957). As to this contention, however, Defendants are mistaken.

It is true that, in *Lanta*, the Seventh Circuit did not reach the same conclusion as did the Indiana Court of Appeals in *Progressive Northern.* However, the *Lanta* decision did not rely upon Indiana law and, in any event, was handed down nearly 35 years prior to Indiana's adoption of the financial responsibility statutes which are clearly controlling here. Further, the *Lanta* decision dealt with a policy provision that differs significantly from current insurance policies. The Seventh Circuit's more recent decision in *Great West* was based on current Indiana statutes relating to financial responsibility and interpretations of those statutes under Indiana case law. *See* Ind. Code §§ 9-13-2-121, 9-25-4-1 through 9-25-4-11; *Great West Cas. Co. v. National Cas. Co.,* 385 F.3d 1094 (7th Cir. 2004); *Progressive Northern Ins. v. Consolidated Ins. Co,* 673 N.E.2d 522 (Ind. App. 1996); *O'Donnell v. American Employers Ins. Co.,* 622 N.E.2d 570 (Ind. App. 1993).

These recent cases uniformly hold, with regard to whether an automobile liability insurance policy issued to an owner of a particular vehicle remains in effect with respect to that vehicle following the transfer of ownership, that it does not.[3] Consequently, we conclude that the holding in *Lanta* is of no value to our analysis here.

Returning to the question of whether Robey sold the vehicle to Ashley Sloan prior to the accident, the evidence supporting the fact of such a sale, as noted previously, comes virtually exclusively from Robey's testimony.[4] The assertion that a sale did not occur is little more than speculation, since no reliable evidence has been adduced to support that theory. Nevertheless, Defendants argue that a question of fact exists which precludes summary judgment. Defendants further maintain that, in any event, we should not reach that issue because, if we apply Ind. Code § 34-45-2-4, the so-called "Dead Man's Statute," no admissible evidence of a contingent sale would exist, because Robey's

---

[3] We note that a good argument can be made for interpreting Indiana's financial responsibility statutes in a manner that does not square with the interpretation adopted by the Indiana Court of Appeals in *Progressive Northern*. Such an alternative analysis would change the result we reach here with regard to continued liability of the American Family liability coverage. However, because our jurisdiction is based on diversity of citizenship, we are obligated to apply a clear rule of decision provided by an intermediate state appellate court interpreting its own substantive law, unless we are certain that the highest court of that state would decide the issue differently. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). We lack such certainty here.

[4] Robey testified that Christine Juday could confirm the existence of the conditional sale agreement that he had entered into with Ashley Sloan, but for reasons not clear to us American Family has not seen fit to submit an affidavit or deposition testimony from Ms. Juday, thus leaving Robey's testimony as the sole support for its contention that the sale to Ashley Sloan occurred and ownership of the car passed to her at that time.

testimony would be excluded in its entirety. In pertinent part, the "Dead Man's Statute" provides:

> **Sec. 4.**
>
> (a) This section applies to suits or proceedings:
> > (1) in which an executor or administrator is a party;
> > (2) involving matters that occurred during the lifetime of the decedent; and
> > (3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.
> > \* \* \*
> (d) Except as provided in subsection (e), a person:
> > (1) who is a necessary party to the issue or record; and
> > (2) whose interest is adverse to the estate;
> is not a competent witness as to matters against the estate.

Ind. Code § 34-45-2-4.

The general purpose underlying the "Dead Man's Statute" is to shield a decedent's estate from spurious claims. *Fisher v. Estate of Haley*. 695 N.E.2d 1022, 1026 (Ind. App. 1998); *Satterthwaite v. Satterthwaite's Estate,* 420 N.E.2d 287, 289 (Ind. App. 1981). The statute aims at preventing those who would take improper advantage of the fact that a decedent is no longer available to contradict them from testifying against the interests of the estate. Clearly, the first two statutory prerequisites as set out in subsection (a) above are satisfied here, but, as American Family argues, since no pecuniary claim has been raised by Robey against the Estate in this lawsuit, the third requirement of subsection (a) is not satisfied.

However, our review of the statute reveals no requirement that there be such a pecuniary claim against the Estate. The mandate in the statute with respect to the Estate's involvement is only that there exist the potential for a judgment to be rendered for or against it. In this declaratory judgment action, American Family seeks a judgment that would be contrary to the interests of the Estate, presuming, as has been hinted at in the briefing, that the Estate of Ashley Sloan seeks to press a cause of action against Prater, who may or may not otherwise have insurance coverage.

In the end, we find that the "Dead Man's Statute" does not apply to bar Robey's testimony, a finding based not on subsection (a)(3) of Ind. Code § 34-45-2-4, but on the fact that Robey's testimony does not relate to a matter concerning which he has an adverse interest. Though he was initially included as a Defendant in this case, he has since been dismissed. In addition, he has testified by deposition that he has not made and does not intend to make any claim against the insurance policy in an attempt to recover whatever remaining interest he may have in the Buick following the death of Ms. Sloan. Nor has he filed any claim against her estate. If Robey were to assert a claim against the Estate, for example, for the remaining $600 due on the purchase of the vehicle per his agreement with Sloan, then clearly he would be precluded from testifying with regard to the deal they had struck. Similarly, if Robey were to assert a claim for indemnity against the Sloan Estate, his testimony would be barred. However, at this juncture, Robey is not a party to this lawsuit and has made clear through his testimony under oath that he is not

seeking to recover any funds from the Estate. Thus, Robey's interests are not adverse to the Estate in any way.

Defendants also contend that Robey's testimony should be excluded because he retains an interest in the outcome of this lawsuit, given that he could potentially be found personally liable for failure to properly maintain the Buick. In addition, Defendants speculate that Robey's insurance rates might increase if his policy were determined to provide coverage. No objection was interposed by Defendants, however, when American Family moved to dismiss Robey and when Robey moved to dismiss his cross-claims. Further, even if Robey theoretically retains some interest in the outcome of this litigation, it would provide an insufficient basis on which to conclude that he is a "necessary party to the issue," as that phrase is used in the "Dead Man's Statute." Indiana case law is clear with respect to what type of interest is necessary for a witness to be found incompetent to testify based on the "Dead Man's Statute."

> A *party to the issue* means the parties between whom there is a controversy submitted to the court for trial, the parties who are litigating the particular issue against whom or for whom the court will render judgment. A party having an interest in the result is not automatically made a party to the issue. If the party is merely one of record, it must appear that he has an interest in the suit in common with the party calling him. . . .
>
> An interest which would render a witness incompetent is one by which the witness will gain or lose by the direct legal operation of that judgment. The interest must be direct, present, certain and vested. It must be a real and legal interest. A bias or sentiment is not sufficient to cause a witness to be incompetent. The interest of the witness must be adverse to the estate.

*Satterthwaite v. Satterthwaite's Estate,* 420 N.E.2d 287, 290 (Ind. App. 1981)(emphasis

added and citations omitted); *see also*, *Fisher v. Estate of Haley*. 695 N.E.2d 1022, 1027 (Ind. App. 1998).

Robey does not possess such an interest in this litigation.  He is, as the evidence makes clear, a person caught in the middle.  He has disclaimed any interest in recovering anything either from his insurer or from his deceased friend's estate.  His involvement in the lawsuit is simply the result of the insurer's attempt to determine the reason(s) Prather and Sloan were in the Buick at the time of the accident.  Robey has testified that they were occupants of the vehicle because Sloan had purchased the Buick from him through installment payments, after his daughters declined his offer to them to use it.  His interest in this lawsuit is therefore, at best, indirect, remote and tangential -  in all respects insufficient to warrant exclusion of his testimony.

Finally, we come to Defendants' contention that, even if Robey was permitted to testify, there remains evidence of record that should cause a fact-finder to question the veracity of his testimony with regard to his sale of the Buick to Sloan.   To support this argument, Defendants have cited testimony from two individuals who attest that Robey had told them that he was the owner of the Buick after he now maintains that he had turned the vehicle over to Ashley Sloan.  One of those witnesses is Julie Ann Mitchell, a friend of Ashley's mother; Ms. Mitchell has testified that, while screening calls and visitors for the family at the hospital on the night of the accident, she had a conversation with Robey when he arrived at the hospital and introduced himself in which he explained

to her the basis for his having known Ashley Sloan and Jeremy Prater; according to Ms. Mitchell, Robey said that "it was his vehicle that they were in." Ashley's aunt, Angela Black-Kilgore, also reportedly had a conversation with Robey at the funeral home, during which she claims Robey told her that the Buick was his and that he had carried insurance on it. She also testified that at some time previously during that year she had seen Robey and Ashley Sloan with the Buick, and that Robey had said then that it was his vehicle. Defendants maintain that the testimony of these witnesses contradicts Robey's claim that he had sold the vehicle to Sloan, which at least casts doubt on Robey's credibility in maintaining otherwise in the course of this litigation.

     We do not view Robey's statements to Mitchell and Kilgore-Black as contradictory of his current testimony that he had entered into an agreement with Sloan for her to purchase the vehicle and make payments for it over time. Nothing indicates that Robey would have known, when he made the statements to Mitchell and Kilgore-Black, that, for purposes relating to the financial responsibility laws, Indiana views a conditional sales agreement as sufficient to pass "ownership" of the vehicle to the purchaser of the vehicle. Similarly, it is understandable that under the circumstances Robey might have mistakenly concluded that, until he received the final payment and signed over the title, he still "owned" the vehicle. His statements simply do not trump a clear and correct application of Indiana law which establishes that ownership of the Buick

was transferred from Robey to Sloan at the time they entered into the purchase agreement and she took possession of the car.

Finally, Defendants cite a statement by Robey in his deposition which, they contend, discredits his account of the facts. In response to a question regarding why he kept insurance on the vehicle after he had sold it to Ashley Sloan, Robey said: "I insured it when I bought it for my daughters and I just left the insurance on after I sold it to her." Prior to his deposition, Robey had stated in answers to interrogatories that he maintained the insurance to protect his security interest. Again, we do not regard these answers as inconsistent or mutually exclusive and, in any event, Robey's responses cannot be construed to alter the legal basis for our rulings interpreting and applying Indiana law.

Though Robey's deposition testimony reveals that he could not always pinpoint exact dates when various events took place, he was quite consistent in recounting the overall factual progression of events. His testimony establishes that he originally purchased the Buick and, after putting license plates on it and fixing the brakes, he drove it a few times to make sure it operated properly. Thereafter, he offered it to his daughters, who declined to accept it because it was not a car they wanted to drive. His own personal use of the car thereafter was at most intermittent. When Ashley Sloan took up residency at Robey's house and learned that Robey was not using the Buick, she asked Robey if she could buy it from him. They reached an agreement on the price, he turned over the keys to her and shortly thereafter she gave him her first installment payment. All of this

occurred within a two to three week period following his initial purchase of the vehicle on August 20, 2006. We find nothing in the evidence adduced here to cause us to question Mr. Robey's truthfulness or accuracy with regard to these events. And, as we indicated above, the evidence on which Defendants base their alternative conclusion that there was no conditional sale is little more than rank speculation - clearly insufficient to create disputes of material fact that would foreclose summary judgment.

*Conclusion*

Indiana law declares that the transfer of ownership of a vehicle, for financial responsibility purposes, occurs when two parties have reached an agreement on a conditional sale and possession of the vehicle is delivered. Ind. Code § 9-13-2-121(b)(1). In late August or early September of 2006, Jeffrey Robey transferred possession of the Buick to Ashley Sloan, agreeing to sell the vehicle to her for the price of $1800, to be paid over time. Robey's testimony to that effect constitutes admissible evidence that Ashley Sloan owned the vehicle from that point forward and the liability coverage issued to Robey by American Family terminated upon transfer of the car to Ms Sloan. Accordingly, American Family is entitled to summary judgment on its claim for declaratory relief as against all Defendants.

IT IS SO ORDERED.

Date: 12/03/2008

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Dean J. Arnold
NUNN LAW OFFICE
deanarn@kiva.net

Mark A. Bennett
bennettlaw@sbcglobal.net

William Henry Kelley
KELLEY BELCHER & BROWN
akelley@kelleybelcherbrown.com

Robert Scott O'Dell
O'DELL & ASSOCIATES PC
rodell@odell-lawfirm.com